EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Watchtower Bible and Tract Society of New York, Inc., et al.<br><br>    Recurridos<br><br>        v.<br><br>Municipio de Dorado, et al.; United States District Court for the District of Puerto Rico<br><br>    Peticionarios | 2015 TSPR 18<br><br>192 DPR ____ |

Número del Caso: CT-2013-14


Fecha: 27 de febrero de 2015

Parte Peticionaria:

    Tribunal de Distrito de los Estados Unidos para el
    Distrito de Puerto Rico

Abogada de la Parte Demandante:

    Lcda. Nora Vargas Acosta


Abogados de la Parte Demandada, Municipio Dorado:

    Lcdo. Héctor Rivera Cruz
    Lcdo. Iván J. Pasarell Jove


*Amicus Curiae*:

    **DBR Dorado Owner, LLC Coco Beach Maintenance, Inc.;
    Serrallés Hotel**
    Lcdo. Arturo García Solá

    **Departamento de Justicia**
    Lcda. Margarita Mercado Echegaray
    Procuradora General


Materia: Resolución con Voto de Conformidad y Voto Particular Disidente.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Watchtower Bible and Tract
Society of New York, Inc.,
et al.

    Recurridos

       v.                      CT-2013-0014

Municipio de Dorado, et al.;
United States District Court
for the District of Puerto
Rico

    Peticionarios

RESOLUCIÓN

En San Juan, Puerto Rico, a 27 de febrero de 2015.

Examinada la Primera Moción de Reconsideración presentada en el caso de epígrafe, se provee no ha lugar.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Martínez Torres proveería no ha lugar por falta de jurisdicción. El Juez Asociado señor Rivera García emitió un voto de conformidad. La Juez Asociada señora Rodríguez Rodríguez emitió un voto particular disidente. El Juez Asociado señor Estrella Martínez reconsideraría y emitió la expresión siguiente:

El Juez Asociado señor Estrella Martínez reconsideraría por los fundamentos contenidos en su Opinión Disidente en el caso Watchtower Bible and Tract Society of New York, Inc., *et al.* v. Municipio de Dorado, *et al.*; United States District Court for the District of Puerto Rico, 2014 TSPR 138, 192 DPR ___, res. El 18 de noviembre de 2014, CT-2013-0014.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Watchtower Bible and Track Society of New York Inc., et al. | *Certificación* |
| Recurridos | |
| v. | CT-2013-0014 |
| Mun. de Dorado, et al. | |
| United States District Court for the District of Puerto Rico | |
| Peticionario | |

Voto de conformidad emitido por el Juez Asociado señor Rivera García

En San Juan, Puerto Rico, 27 de febrero de 2015.

Estoy conforme con la resolución que antecede en la que se declara no ha lugar la moción de reconsideración presentada por el Estado, porque estoy convencido de que la opinión que emitimos en el caso de epígrafe es correcta en derecho. Ahora bien, en esta ocasión me veo en la necesidad de responder a falsas y descontextualizadas expresiones emitidas por la compañera Juez Asociada señora Rodríguez Rodríguez, quien una vez más aprovecha la comodidad de la disidencia para incurrir en un ejercicio de catalogar como infundadas e irreflexivas toda posición contraria a su parecer, implicando que en su imaginario, el

derecho es una ciencia exacta bajo la cual existe una sola visión válida y correcta: la suya.

Lo irónico – y por demás desafortunado que ocurra en nuestro Tribunal Supremo - es que la compañera pretende sustentar su postura en una exposición totalmente tergiversada de la Opinión emitida. Esto con el patente propósito de imputarle a una mayoría de este tribunal la provocación de un "antagonismo socioeconómico" mediante un presunto adelanto de "intereses privados" y de provocar una "desigualdad social". Verdaderamente, sus intenciones son "tan claras que hieren la retina". Le recordamos a la distinguida Juez que, "bajo las nociones más elementales", no es sincero ni honrado inducir a error presentando una desvirtuada e incompleta relación del derecho. Ante ello, me veo precisado a aclarar las lagunas que evidentemente reflejan las expresiones del voto disidente, y así reiterar los fundamentos que sustentaron nuestra pasada decisión de Watchtower Bible Track Society of New York, et al. v. Mun. de Dorado, et al., res. el 18 de noviembre de 2014, 2014 TSPR 138.

En aquella ocasión, atendimos un recurso de certificación interjurisdiccional solicitado por el Tribunal Federal de Distrito para el Distrito de Puerto Rico mediante el cual contestamos la interrogante siguiente: ¿Permiten las leyes de Puerto Rico la existencia de calles residenciales privadas? Certificada la referida pregunta, evaluamos las leyes vigentes con el

objetivo de aclarar si nuestro ordenamiento jurídico, en efecto, reconoce su existencia.[1] Se trató así de una controversia novedosa a la luz de un contexto fáctico que no habíamos considerado en el pasado. En ese sentido, este Tribunal no creó una norma jurídica atípica en nuestro ordenamiento y mucho menos revocó precedente legal alguno.

En esencia, las críticas de la Juez Asociada señora Rodríguez Rodríguez se circunscriben a señalar que alegadamente resolvimos que una calle puede ser privada basándonos única y exclusivamente en la procedencia de los fondos con los cuáles se construyó.[2] Así por ejemplo, sostiene que "una mayoría concluy[ó] que la determinación en cuanto a si un bien como las calles es público o privado estriba exclusivamente en la procedencia de los fondos con los que se subvencionó su construcción".[3] También, arguye que abordamos cierta jurisprudencia para "validar [nuestra] peculiar tesis de que, para determinar si las calles son públicas o privadas, tenemos que auscultar con que fondos estas se construyeron".[4]

---

[1] Dado a que la Asamblea Legislativa de Puerto Rico no ha promulgado una legislación especial en cuanto a esta materia, nuestro análisis se circunscribió a estudiar los preceptos del Código Civil de Puerto Rico y la jurisprudencia aplicable.

[2] Note el lector que sí hicimos referencia al análisis del Profesor Godreau referente a que el Art. 256 del Código Civil de Puerto Rico contiene una lista de bienes "construidos o creados con fondos públicos". Véase, Watchtower Bible Track Society of New York, et al. v. Mun. de Dorado, et al., res. el 18 de noviembre de 2014, 2014 TSPR 138, 24. Ello, como apoyo a la teoría de que ese artículo trata de bienes en los que tiene injerencia el Estado.

[3] Voto Particular disidente de la Juez Asociada señora Rodríguez Rodríguez, pág. 15.

[4] Íd., pág. 15, n. 9.

La línea adjudicativa que la Juez Asociada le imputa a una mayoría de esta Curia dista mucho de lo que resolvimos. No hay duda alguna de que en ninguna parte de la Opinión este Tribunal realizó semejantes aseveraciones. Máxime cuando en nuestra exposición del derecho aclaramos que lo determinante para que un bien sea de dominio público es su finalidad –que la decide el Estado- independientemente de la actividad de construcción de la cosa.[5] En Watchtower, supra, señalamos que dentro del escueto lenguaje de los Arts. 255 y 256 del Código Civil de Puerto Rico, 31 LPRA secs. 1024 y 1025, podíamos llegar a la conclusión de que las calles de dominio público son aquellas que el Estado ha decidido mantener o costear con sus propios fondos. En específico, señalamos que:

> si bien el Art. 256 del Código Civil de Puerto Rico, supra, indica que las calles y los caminos vecinales son de dominio público, una interpretación lógica de ese precepto nos lleva a concluir que ello se menciona en el contexto de que estos sean **mantenidos o costeados** por el Estado. (Énfasis nuestro).[6]

También mencionamos que:

> las calles que forman parte de la categoría de bienes de dominio público son **las costeadas y mantenidas por los mismos pueblos y que están destinadas al uso público.** El andamiaje jurídico vigente no requiere que todas las vías residenciales se traspasen a título de los municipios con fin de destinarlas al uso

---

[5] Véase, Watchtower Bible Track Society of New York, et al. v. Mun. de Dorado, et al., supra, pág. 19, n. 18.

[6] Watchtower Bible Track Society of New York, *et al*. v. Mun. de Dorado, *et al.*, supra, pág. 26.

público. Al ser así, **las calles que no se transfieran a un ente gubernamental, quedarán fuera del régimen del Art. 256 del Código Civil**…. (Énfasis nuestro).[7]

**Nótese la referencia en cuanto a la necesidad de que se realice una transferencia de las calles a algún organismo del Estado con el propósito de que entren al dominio público**. Ello conllevaría que el Estado las costee y las mantenga.[8] Pues tal como señaló el entonces Juez Asociado Negrón García en una controversia suscitada a la luz de la Ley sobre Control de Acceso Vehicular[9], ante el evento hipotético de que la Asamblea Legislativa decida traspasar calles residenciales públicas a bienes de uso privado, "su mantenimiento (el de las calles) no podrá ser con fondos públicos municipales o estatales".[10] Y es que, no podría ser de otra manera.

Sorprendentemente, la Juez Asociada señora Rodríguez Rodríguez acusa a una mayoría de este Tribunal de "no discern[ir] el significado de estas expresiones".[11] Sin embargo, al parecer fue esta quien tuvo dificultad en

---

[7] Id. Pág. 27.

[8] La palabra "costear" significa "pagar o satisfacer los gastos de algo" o "producir lo suficiente para cubrir los gastos que ocasiona". Diccionario de la Real Academia española, disponible en: http://lema.rae.es/drae/?val=costear, última visita: 19 de febrero de 2015. Que es lo que evidentemente sucede cuando el Estado adquiere, mediante el método que sea, alguna parcela para uso público: la costea, la mantiene con sus fondos.

[9] Ley Núm. 21 de 20 de mayo de 1987.

[10] Asoc. Ctrl. Acc. C. Maracaibo v. Cardona, (Negrón García, J., Op. Concurrente y Disidente), 144 DPR 1, 66 (1997), según citado en Watchtower Bible Track Society of New York, *et al*. v. Mun. de Dorado, *et al.*, supra, pág. 24.

[11] Voto Particular disidente, pág. 19, n. 13.

asimilar los pronunciamientos que el entonces Juez Asociado enunció en ese mismo caso, a pesar de que inmediatamente preceden las expresiones que según su criterio, no pudimos "discernir". Nos referimos a las siguientes: **"[e]l Art. 256 del Código Civil, 31 L.P.R.A. sec. 1025, describe las calles como bienes de uso público en Puerto Rico y en sus pueblos, costeadas por los mismos pueblos o con fondos del Tesoro de Puerto Rico."**[12] **Evidentemente**, al referirse a las 'calles públicas' lo hizo considerando que estas eran las costeadas por el Gobierno.

Esta es la "famosa coletilla" a la que tanto alude la Juez Asociada en su Voto Particular. Como sabemos, el Art. 256 del Código Civil de Puerto Rico, <u>supra</u>, lee de la siguiente manera:

> [s]on bienes de uso público en Puerto Rico y en sus pueblos, los caminos estaduales y los vecinales, las plazas, calles, fuentes y aguas públicas, los paseos y las obras públicas de servicio general, costeadas por los mismos pueblos o con fondos del tesoro de Puerto Rico.

En su Voto Particular disidente señala que este precepto "no incluye el calificativo 'públicas' para modificar el término calles".[13] Ante ello, no vacila en opinar que "la coletilla 'costeadas por el Estado', bajo las nociones más elementales de gramática, modifica las

---

[12] <u>Asoc. Ctrl. Acc. C. Maracaibo v. Cardona</u>, supra, pág. 66.

[13] Voto Particular disidente, pág. 14, n. 8.

obras públicas de servicio general y no los demás bienes comprendidos en el artículo [256]".[14]

Parecería ser que la Juez se refiere a la "regla del último antecedente" que dispone que "las palabras, frases o cláusulas relativas, o que modifican, deben ser aplicadas a las palabras o frases que inmediatamente le preceden y no deben ser interpretadas en el sentido de extenderse a incluir otras más remotas".[15] Sin embargo, algunos autores nos explican que:

> [...] esta regla del **último antecedente no tiene gran valor.** Sólo funciona cuando nada hay en el estatuto que indique que la palabra relativa o la disposición modificadora tiende a surtir un efecto diferente. La regla solo debe utilizarse cuando otras reglas de hermenéutica no hayan permitido descubrir la verdadera intención del legislador. Si hay algo en la ley indicativo de que la intención es que la palabra relativa o disposición modificadora se aplique a otras palabras en vez del antecedente inmediatamente anterior, la regla debe ser descartada. **Basta una leve indicación para que pueda extenderse el alcance del término relativo o disposición modificadora a otras palabras, en lugar de sólo al último antecedente.** [...] **Todavía más, si surge que el último antecedente puede aplicarse de igual manera a todas las disposiciones anteriores, debe aplicarse a todas las palabras que le anteceden.** (Citas omitidas) (Énfasis en el original y énfasis suplido).[16]

Precisamente, una lectura del Art. 256 del Código Civil y la doctrina que lo interpreta nos lleva a concluir que los bienes -no propios de la naturaleza- que allí se mencionan, <u>son los que en sí mismos constituyen obras del ente público, porque el gobierno asume su costo o su mantenimiento</u>. Repasemos lo acotado en <u>Watchtower</u>, supra, en cuanto al análisis que el tratadista Garrigo Falla hiciera relacionado al Art. 344 del Código Civil español, análogo al Art. 256 nuestro, el cual abona a la referida conclusión. Allí expresamos lo siguiente:

> Por otro lado, Garrido Falla nos dice que el Art. 344 del Código Civil español contiene un lenguaje esencialmente

---

[14] Id., págs. 16-17.

[15] Véase, R. Elfren Bernier y J.A. Cuevas Segarra, <u>Aprobación e interpretación de las leyes en Puerto Rico</u>, 2da Ed., San Juan, Publicaciones J.T.S., 1987, V.1., pág. 343.

[16] Id.

> idéntico al del Reglamento de Bienes de España de 1986, que establecía en su Art. 3.1 que:
>
> […] son bienes de uso público local los caminos, plazas, calles, paseos, parques, aguas de fuentes y estanques, puentes y demás obras públicas de aprovechamiento o utilización generales cuya conservación y policía sean de la competencia de la entidad local. F. Garrido Falla en M. Albaladejo y otros, Comentarios al Código Civil, Madrid, Ed. Edersa, 1990, T. V, Vol. I., pág. 130.
>
> Mencionamos el comentario del tratadista ya que al hacerlo, señala que la expresión "y demás obras públicas" no deja de ser un acierto del legislador, porque **"aclara que aquellos paseos, caminos o parques que no sean ellos mismos 'obras públicas' no forman parte del dominio ni del demanio de las entidades locales"**. (Énfasis en el original).[17]

Independientemente de que la situación en España sea diferente a la de Puerto Rico debido a la existencia de bienes de la nación y bienes de las provincias, lo precitado aclara que los bienes que en ese artículo se enumeran son públicos porque son en sí mismos obras públicas. El siguiente análisis de este mismo tratadista –al cual también hicimos alusión en Watchtower, supra- nos lleva a sostener esa determinación. Veamos.

Haciendo referencia a las calles residenciales, el precitado autor nos menciona que de la legislación urbanística española parece desprenderse que "…aunque la obra sea sufragada por los promotores privados, la calle construida ha de ser cedida al Ayuntamiento y, **por tanto, entra en su patrimonio (público)**". (Énfasis y subrayado nuestro).[18] Luego de discutir esto, reseña lo siguiente:

---

[17] Watchtower Bible Track SOciety of New York, *et al.* v. Mun. de Dorado, *et al.*, supra, págs. 25-26.

[18] Albaladejo y otros, Comentarios al Código Civil, Madrid, Ed., Edersa, 1990, T.1, Vol. 1, pág. 132, según citado en Watchtower Bible Track Society of New York, *et al.* v. Mun. de Dorado, *et al.*, supra, pág. 21, n. 21.

> [l]o que ocurre es que la recepción de obras por el Ayuntamiento… no siempre se realiza. […] **Si no ha habido, pues, recepción de las obras por parte del Ayuntamiento, estamos aquí en la presencia de las polémicas 'calles privadas'.**[19]

Lógicamente, de ello puede deducirse que una calle es pública porque ha entrado en el dominio del ente gubernamental porque así lo ha exigido la legislación o reglamentación urbanística aplicable. De manera que, **una calle es pública porque está bajo el dominio y control del Estado, esto, independientemente del procedimiento mediante el cual este la haya adquirido.** Una de las maneras en que el Estado puede adquirir una calle es cuando requiere que estas se cedan a su favor para dedicarlas a uso público, esto como condición para la aprobación de proyectos residenciales. En Watchtower, supra, reconocimos que el andamiaje jurídico vigente a esa fecha no requería que todas las vías residenciales se traspasaran a título de los municipios para destinarlas a uso público.[20] Esto, haciendo referencia a la reglamentación adoptada al amparo de la Ley Núm. 161-2009.

Tal como reseñamos en nuestra Opinión, un bien de uso o dominio público no está supeditado a quién sea el dueño inicial de este, **sino que la Asamblea Legislativa de Puerto Rico, en el pleno ejercicio de su poder de razón de estado, puede determinar que cierto bien se destine al uso**

---

[19] Id.

[20] Watchtower Bible Track Society of New York, et al. v. Mun. de Dorado, et al., supra, pág. 27.

**público**.[21] Más aun cuando reiteradamente hemos reconocido que la actividad urbanística no es un derecho absoluto, sino que está condicionado a la regulación que a bien entienda imponer el Estado.[22] En otras palabras, el Estado tiene la potestad de decidir que las calles residenciales tengan que cederse al ente gubernamental para que formen parte del dominio público. En caso de que proceda de manera contraria, deberá entonces sopesar las consecuencias que ello pueda conllevar y legislar lo que al respecto entienda pertinente, momento propio para que se puedan evaluar las supuestas interrogantes de la Juez Asociada, las cuales expone en las últimas páginas de su Voto Particular.

Como vemos, no hace falta mucho esfuerzo para percibir el recurrente ejercicio de la distinguida Juez de presentar lo que no es, como si fuese. Pero, no conforme con ello, también afirma que una mayoría de este Tribunal descontextualizó "acomodaticiamente" las palabras del tratadista José Martín Blanco. Como fundamento a sus imputaciones, menciona que este denuncia en su libro la falta de una regulación legal específica en torno a las urbanizaciones privadas en la jurisdicción española.[23] Si bien es cierto que Martín Blanco formula ese señalamiento, como veremos, es la Juez quien presenta el mismo

---

[21] Id.

[22] Id., págs. 27-28.
[23] Voto particular disidente, pág. 20.

"acomodaticiamente" so pretexto de desvirtuar nuestras expresiones.

Como se recordará, en <u>Watchtower</u>, supra, puntualizamos que existían varias opiniones sobre la controversia objeto de este caso.[24] Al hacerlo, mencionamos lo siguiente:

> según el tratadista español Martín Blanco, la posibilidad de las llamadas 'calles particulares' se fundamenta en la interpretación literal, lógica, sistemática y de praxis administrativa del Art. 344 del Código Civil español….[25]

En su obra *Las urbanizaciones privadas y su posible configuración jurídica*, luego de exponer que las urbanizaciones privadas van siendo "cada vez más cuestión de necesidad y cada vez menos postura de moda", José Martín Blanco aborda la problemática relacionada a este

---

[24] <u>Watchtower Bible Track Society of New York</u>, *et al*. v. <u>Mun. de Dorado</u>, *et al.*, supra, pág. 9. En aquella ocasión también mencionamos la opinión de la Profesora García Cárdenas, quien colige que aun "[e]n las urbanizaciones constituidas bajo la égida de la ley de condominios, tampoco existen calles privadas". M.E. García Cárdenas, <u>Derecho de urbanizaciones: servidumbres en equidad, controles de acceso e instalaciones vecinales</u>, San Juan, Ed. Interjuris, 2010, págs. 82-83, según citado en <u>Watchtower Bible Track Society of New York</u>, *et al.* v. <u>Mun. de Dorado</u>, *et al.*, supra, pág. 10. Casualmente, en su Voto Particular la Juez Asociada señora Rodríguez Rodríguez apunta lo siguiente:

> Así, (la mayoría) distingue entre aquellas calles costeadas por el Estado y aquellas costeadas por particulares […] Esto a pesar de que ambos bienes cumplen la misma función y exhiben las mismas características físico-espaciales. Este silogismo es inaudito y carece de toda lógica. Voto particular de la Jueza Asociada señora Rodríguez Rodríguez, págs. 15-16.

**Nos preguntamos si no cumplen la misma función y si no exhiben las mismas características físico-espaciales las calles de las urbanizaciones constituidas bajo la Ley de Condominios, por el mero hecho de que en estas, el área de rodaje sea parte de los elementos comunes.**

[25] <u>Watchtower Bible Track Society of New York</u>, *et al*. v. <u>Mun. de Dorado</u>, *et al.*, supra, pág. 9.

tipo de proyecto residencial en esa jurisdicción.[26] Uno de los propósitos de su obra es intentar construir la configuración legal de estos núcleos urbanos y comenta sobre cómo debería reformarse la ley española a esos efectos.[27] Es dentro de ese análisis que sostiene que una urbanización privada puede construirse si se consideran ciertos elementos, entre ellos, "[u]na aprobación del plan de ordenación, específico y propio, por la Administración".[28] Es aquí cuando discute que existen dos

---

[26] J. Martín Blanco, Las urbanizaciones privadas y su posible configuración jurídica, Madrid, 1973, págs. 20-21.

[27] Martín Blanco, op. cit., pág. 33. El autor señala lo siguiente al hablar sobre la necesidad de una configuración integral del derecho español en cuanto a las urbanizaciones privadas:

> "Surge, en primer término, en esta línea de consideraciones, la observación de que este tratamiento jurídico de las urbanizaciones privadas **requiere apertura mental libre de prejuicios jurídico-públicos y de prejuicios justiprivatistas.**
>
> La contemplación a través del prisma público puede llevar a una deformación de la naturaleza jurídica propia de la figura desdibujada entonces por un indebido criterio intervencionista a ultranza o por una configuración municipalista absoluta que, en mi opinión, no procede y que no responde a la verdadera esencia de la urbanización privada.
>
> También sería erróneo su enjuiciamiento desde la perspectiva exclusiva del Derecho privado. Si bien es cierto que, fundamentalmente, estas urbanizaciones se construyen y viven sobre un conjunto de relaciones jurídicas privadas, no puede desconocerse la esfera de actuación administrativa que opera en su nacimiento y desarrollo legal y de hecho". (Énfasis nuestro). Martín Blanco, op. cit., págs 26 y 27.

[28] Martín Blanco, op. cit., pág. 50. Los otros elementos son:
1. Una propiedad única y total o una copropiedad voluntaria del suelo en forma de cotitularidad permitida por las leyes y una iniciativa privada o particular en la promoción y en la redacción del plan;
2. Una división del terreno en varios lotes o parcelas;
3. Una organización jurídica de los intereses y de las relaciones jurídicas existentes entre la propiedad promotora y os adquirentes; entre unos y otros y terceras personas; entre aquéllos y la Administración, y

cuestiones muy debatidas en la doctrina, estas son: "[s]i pueden existir calles y elementos comunes de propiedad y uso privado dentro de la urbanización" y "[l]a cesión y conservación de aquellos y de los servicios".[29] En cuanto a lo primero, el autor indica que sus conclusiones pueden resumirse de la siguiente forma:

> **La posibilidad legal de existencia de calles, espacios y elementos comunes de propiedad y uso privados dentro de la urbanización privada se fundamenta en razonamientos legales, jurisprudenciales y de praxis administrativa.**
>
> **De la interpretación literal, lógica y sistemática de los artículos 344 del Código Civil y 41, 2, 50, 77 y 168 de la Ley del Suelo resulta claramente que se reconoce la existencia de dicha propiedad y uso privado sin que, por otra parte, exista precepto legal alguno en nuestro ordenamiento positivo que prohíba expresamente tal posibilidad.** (Énfasis nuestro).[30]

La Juez Asociada señora Rodríguez Rodríguez tiene todo el derecho de discrepar de esas aseveraciones, así como de los fundamentos esbozados por una mayoría en Watchtower, supra, para llegar a una conclusión similar.[31] Lo lamentable es que de manera aviesa catalogue nuestra interpretación como "acomodaticia" y "descontextualizada", cuando evidentemente su afirmación es incorrecta. ¿Qué más nos resta decir? Tal vez que sería muy sabio aplicar

---

4. Un núcleo urbano resultante con características específicas en cuanto a su emplazamiento, autonomía superficial, destino residencial y tipo de vida, que ha de ser insertado en el contexto administrativo y territorial municipal.

5.

[29] Martín Blanco, op. cit., pág. 74.

[30] Martín Blanco, op. cit., pág. 75.

[31] Nótese que hicimos referencia a las expresiones de este autor con el único propósito de presentar las distintas opiniones a favor y en contra del reconocimiento de este tipo de calles.

el famoso proverbio que dispone que "mejor es tratar de sacar la viga que está en tu propio ojo antes de tratar de sacar la paja que está en el ojo de tu hermano".

Dicho esto, nos resta por considerar ciertos puntos expuestos por el Estado en su moción de reconsideración. Contrario a lo que este arguye[32], nuestra determinación no tiene el efecto de validar ni desaprobar los negocios jurídicos que se llevaron a cabo entre el proyecto Brighton Country Club y el Municipio de Dorado. Al contestar la pregunta certificada, no atendimos el hecho de si las calles de ese proyecto eran privadas o públicas a la luz de la reglamentación aplicable al momento de su desarrollo. Esa no era la interrogante que estaba ante nosotros y por ende, no formulamos una respuesta a la misma. Nuestra función adjudicativa se limitó única y exclusivamente a contestar si el andamiaje jurídico puertorriqueño permitía o daba lugar a la existencia de calles residenciales privadas. Es en ese contexto que emitimos la Opinión del Tribunal.

En fin, luego de atender los planteamientos presentados y los postulados carentes de fundamentos que se exponen en el Voto Particular disidente, reafirmo mi conformidad en declarar no ha lugar la moción de reconsideración instada en este recurso.

---

[32] Véase, Solicitud de reconsideración, pág. 2.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Watchtower Bible and Tract Society of New York, Inc., *et al.*<br><br>Recurridos<br><br>v.<br><br>Municipio de Dorado, *et al.*; United States District Court for the District of Puerto Rico<br><br>Peticionarios | CT-2013-0014 | Certificación |

Voto Particular Disidente emitido por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 27 de febrero de 2015.

> "When privatization and exclusion become dominant . . . we must question whether [a] democracy founded on citizenship and community remains possible".[33]

Mediante una lectura inusitada del artículo 256 de nuestro Código Civil y planteamientos inconexos respecto a los bienes de dominio público en nuestro ordenamiento jurídico, una mayoría de este Tribunal altera la naturaleza inherentemente pública de las calles residenciales en Puerto Rico, sin ponderar las consecuencias que una desafectación mediante un acto judicial acarrea. La obstinación, ya generalizada, de una mayoría de este Tribunal de llegar a un resultado

---

[33] Edward J. Blakely & Mary Gail Snyder, *Fortress America: Gated Communities in the United States* 7 (1997).

particular, sin fundamentos que lo sustenten, amerita un análisis concienzudo de la norma pautada en este caso y de sus efectos sociales, gubernamentales y económicos. Esto, en un País cada vez más sujeto a la incertidumbre que provoca la fragmentación de una sociedad concebida inicialmente como una comunidad política democrática e igualitaria.

Sin embargo, una mayoría de este Tribunal opta por una deliberación irreflexiva de la controversia planteada y se desvincula de la norma jurídica imperante en nuestro ordenamiento con relación a la naturaleza de las calles. Tal curso de acción atenta contra la configuración misma de lo público y, además, permite que la gestación y conformación de dicho espacio sea relegada a intereses privados, que bien pudieran no darle la importancia debida a las consideraciones sociales que deben guiar el desarrollo urbano. Esto, puesto que las calles, ante todo, son espacios de confluencia social y cultural que viabilizan el ejercicio cabal de un sinnúmero de prerrogativas ciudadanas y derechos; entre ellos, el de la libre expresión.

De otra parte, la Opinión emitida elude el contexto fáctico particular que motivó la pregunta que nos fue certificada. Con este proceder, y quizá inadvertidamente, se convierten en cómplices de un urbanismo malogrado, cuya consecuencia última será, sin duda, "una representación espacial de las características de la nueva sociedad y de su política de distinción, o, en

otros términos, de inclusión/exclusión". Bernardo Secchi, *Las nuevas ciudades de los ricos*, El País, *disponible en* http://cultura.elpais.com/cultura/2015/01/29/actualidad/1 422550215_066847.html (última visita 6 de febrero de 2015).

Lo que es peor, la Opinión emitida se sustrae de las consideraciones de índole constitucional y social que deben guiar nuestro quehacer judicial, aun en ámbitos que suelen concebirse como privados. Es decir, las calles han de ser evaluadas jurídicamente en función de razones públicas, en tanto éstas significan un espacio indispensable de lo que debería ser la convivencia democrática. Consecuentemente, dado que no se precisan los contornos de la nueva figura jurídica que la Opinión inserta a nuestro ordenamiento, una mayoría de este Tribunal opta por desencadenar una serie de incógnitas y polémicas irresolutas e incompatibles con lo que es, o debería ser, la esencia de la función judicial.

Ante el vacío jurídico que supone la Opinión emitida por este Tribunal, me resulta ineludible expresarme, una vez más, en torno a la pregunta que nos fue certificada. Conviene, pues, repasar sucintamente los hechos concretos que dieron lugar a las expresiones vertidas por la mayoría.[34]

---

[34] Para una relación de los hechos relacionados al desarrollo del pleito a nivel federal, véase, *Watchtower Bible and Tract Society v. Municipio de Dorado*, 2014 T.S.P.R. 138 (Rodríguez Rodríguez, J., Op. Disidente).

# I

El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico acudió ante este Tribunal mediante el mecanismo de certificación interjurisdiccional y formuló la siguiente pregunta: "¿Existen calles privadas en Puerto Rico?". Esto es, se nos solicitó que indagáramos respecto a la posibilidad de que nuestro andamiaje legal permitiera la existencia de calles residenciales privadas. La pregunta certificada fue producto de unos señalamientos por parte del Municipio de Dorado con relación a la existencia de una urbanización dentro de sus linderos territoriales cuyas calles residenciales alegadamente pertenecían a la Asociación de Residentes y no al Municipio. En atención a esto, planteó que la referida urbanización estaba exenta de cumplir con las órdenes emitidas por el foro federal, las cuales, según arguyeron, estaban dirigidas únicamente a aquellas calles pertenecientes al Estado o los municipios, y no a las de titularidad privada.

La urbanización, Brighton Country Club (BCC), es un complejo residencial que opera con un sistema de control de acceso automatizado establecido bajo la Ley de Control de Acceso, Ley Núm. 21 de 20 de mayo de 1987, según enmendada, 23 L.P.R.A. sec. 64, *et seq*. (Ley de Control de Acceso). En clara contravención a las leyes y los reglamentos aplicables, BCC llegó a un acuerdo con el Municipio de Dorado mediante el cual este último aprobó

el proyecto de urbanización. La aprobación se condicionó a que las calles de la urbanización se mantuvieran como propiedad privada y la asociación de residentes se encargara de su mantenimiento y alumbrado, entre otros particulares. Conforme al acuerdo, luego de la segregación de las calles y de las áreas comunes, los desarrolladores transfirieron la titularidad de éstas a la Asociación de Residentes y no al Municipio, como exigía en aquel momento la reglamentación aplicable. Ante el foro federal, el Municipio argumentó que las calles dentro de la urbanización eran privadas pues su mantenimiento y titularidad recaían en la Asociación de Residentes. Por tal razón, la Asociación de Residentes podía prohibir la entrada de Testigos de Jehová a las calles de la urbanización.

El 18 de noviembre de 2014, este Tribunal emitió una Opinión para el recurso de certificación que nos fue presentado. En ella, una mayoría de los miembros de este Foro concluyó que "el ordenamiento jurídico puertorriqueño **vigente** contempla la existencia de calles residenciales privadas". *Watchtower Bible and Tract Society of New York, Inc., et al. v. Municipio de Dorado*, 2014 T.S.P.R. 138, en la pág. 28. Por su parte, el 8 de diciembre de 2014, el Estado Libre Asociado de Puerto Rico presentó oportunamente una *Solicitud de reconsideración*.[35] El 16 de diciembre de 2014, Watchtower

---

[35] Es importante señalar que, si bien el ELA no es parte formal en el pleito que se dilucida ante el foro federal,

Bible and Tract Society of New York se unió a los argumentos presentados por el ELA y los adoptó por referencia mediante una moción. En esencia, el ELA solicita que una mayoría de este Tribunal reconsidere la contestación que ofreció a la pregunta que nos fue planteada. Por entender que la réplica de este Tribunal a la pregunta planteada es contraria a Derecho, disiento de la negativa contumaz de una mayoría de reconsiderar sus pronunciamientos.

## II

Una contestación sensata por parte de este Tribunal a la pregunta que nos fue certificada, exigía, en primer lugar, estudiar detenidamente la normativa aplicable al desarrollo de urbanizaciones privadas en Puerto Rico, según ésta se contempla en los reglamentos de desarrollo urbano y planificación **vigentes** al momento del acuerdo suscrito entre el Municipio de Dorado y los desarrolladores de BCC. No obstante, una mayoría decidió prescindir de realizar ese estudio, el cual, forzosamente, hubiese conducido a una respuesta mucho más acertada y coherente.

---

sí compareció ante este Tribunal en calidad de *amicus curiae* en atención a la trascendencia y las posibles implicaciones a intereses ínsitos a la gestión eficaz de gobierno, de la pregunta que nos fue certificada. Así, presentó un alegato y participó de la vista oral celebrada ante el Pleno de este Tribunal. Cabe recordar que en *Gorbea Vallés v. Registrador*, 133 D.P.R. 308 (1993) inequívocamente expresamos que, "[e]n cuanto a la capacidad del *amicus curiae* de solicitar una reconsideración, no encontramos fundamento alguno que lo impida o que restrinja nuestra discreción de acogerla". *Id.* en la pág. 314 (aludiendo a *Green v. Biddle*, 21 U.S. 1 (1823)).

Como señalé en mi Opinión Disidente, el Municipio de Dorado endosó el proyecto de urbanización el 23 de julio de 2007. Independientemente de la manera en la que el foro federal formuló la pregunta que nos fue certificada, para esa fecha, el artículo 9.10 del Reglamento de Lotificación y Urbanización, Reglamento Núm. 6992 de 30 de junio de 2005, disponía que las nuevas vías o vías existentes que requiriesen ser prolongadas, ampliadas o realineadas debían ser dedicadas al uso público para garantizar acceso a las vías públicas. Además, exigía que esas áreas fuesen transferidas al municipio o agencia estatal a la que correspondiese su administración y mantenimiento conforme a la ubicación del proyecto urbanístico.

Por su parte, el artículo 3.05 del mismo Reglamento expresamente preceptuaba que no se expedirían permisos para la lotificación de solares sin que éstos tuviesen una vía pública que sirviese de entrada y salida al solar urbanizado. Asimismo, el artículo 7.02 del mismo Reglamento, en lo referente a las urbanizaciones residenciales, disponía que todo nuevo solar a ser formado para estos propósitos debía tener acceso a través de una calle pública debidamente inscrita en el Registro de la Propiedad. Precisamente por ello, la Ley Hipotecaria exige el traspaso de las calles segregadas a nombre del Municipio para su debida inscripción. *Véase*, Ley Hipotecaria y del Registro de Propiedad, Art. 93, 30 L.P.R.A. sec. 2314. Como indiqué en la Opinión Disidente

emitida para el caso ante nuestra reconsideración, ese requisito no es más que una atemperación de las disposiciones de la Ley Hipotecaria a la naturaleza demanial de las calles en nuestro ordenamiento, según ésta se desprende del artículo 256 del Código Civil. En cuanto a esto, cabe reiterar la justificación detrás de la segregación y transferencia a favor del municipio por parte de un desarrollador de aquellas calles dentro de un complejo residencial que permitan el acceso a una vía principal. Veamos.

El artículo 500 del Código Civil regula el derecho de paso de un propietario de una finca para acceder un camino público. Específicamente, éste dispone que

> El propietario de una finca o heredad enclavada entre otras ajenas y sin salida a camino público, tiene derecho a exigir paso por las heredades vecinas, previa la correspondiente indemnización.
> Si esta servidumbre se constituye de manera que pueda ser continuo su uso para todas las necesidades del predio dominante, estableciendo una vía permanente, la indemnización consistirá en el valor del terreno que se ocupe y en el importe de los perjuicios que se causen en el predio sirviente.

Cód. Civ. P.R. Art. 500, 31 L.P.R.A. sec. 1731.

En atención a esta disposición legal, en el caso de urbanizaciones residenciales, luego del proceso de segregación, las distintas fincas residenciales contenidas en el desarrollo deberán tener salida a un camino público. Ello, con tal de conciliar la multiplicidad de intereses propietarios que convergen en este tipo de desarrollo. De esta forma, además, se dota a

cada unidad propietaria del mínimo indispensable para que pueda funcionar por sí misma en el contexto más amplio que la circunda; a saber, una vía pública a través de la cual pueda posibilitarse la utilidad social y económica de la propiedad.

La anomalía que representa el hecho de que las calles dentro de la urbanización le pertenezcan a la Asociación de Residentes -esto es, admitir la posibilidad de calles privadas- supone la creación de múltiples servidumbres de paso que garanticen que estos solares residenciales no se configuren como fincas enclavadas. Tal posibilidad, por tanto, es lo que permite aseverar que, en efecto, la Opinión suscrita por una mayoría de este Tribunal *crea* una nueva figura jurídica, cuyos contornos, empero, no precisa satisfactoriamente. Así, al desvirtuar la naturaleza pública de las calles, la cual engranaba coherentemente con las demás disposiciones legales y reglamentarias atinentes, este Tribunal ratifica una nueva manera, infortunada, de atender las complejas relaciones que se suscitan en el seno de un complejo residencial privado. Conviene entonces considerar la adecuación del Artículo 500 al caso particular de urbanizaciones residenciales.

Ante la posible creación de múltiples servidumbres de paso dentro de una sola urbanización residencial, sería necesario determinar quién ostentaría la titularidad del predio sirviente. En el caso en el que las calles sean propiedad de la Asociación de Residentes,

cabría indagar si no "se llega al absurdo de que la servidumbre se constituya en beneficio del propietario del fundo gravado, aunque sea cotitular, de esta manera no sólo la servidumbre se extinguiría por confusión, sino que además perdería el carácter de derecho real en cosa ajena". J.A. Orejas Casas, *Las urbanizaciones privadas y el registro de la propiedad*, Boletín de información Núm. 1723, Madrid, 25 de octubre de 1994, en la pág. 5486.[36] En cualquier caso, aun si el desarrollador figurase como propietario de las calles, habría igualmente "que establecer servidumbres de paso a favor de cada lote de la urbanización, en cuanto a la totalidad de las calles hasta la salida a la vía pública". Margarita García Cárdenas, *Derecho de urbanizaciones: Servidumbres en equidad, controles de acceso e instalaciones vecinales* 137 (2010). De lo contrario, se estaría permitiendo la existencia de múltiples fincas enclavadas en complejos residenciales, en evidente contravención a lo dispuesto en el artículo 500 del Código Civil. *Véase* García Cárdenas, *supra,* en la pág. 137.[37]

---

[36] A pesar de que una Asociación de Residentes posee personalidad jurídica propia, si bien atípica, sería reprochable sancionar el uso de una ficción jurídica para desentenderse de que sus miembros son propiamente cotitulares de las calles en cuestión.

[37] Conceptuar una calle privada supone, en efecto, equiparar ésta con una mera servidumbre de paso. No obstante, las consideraciones de política pública que informan ambas figuras son muy disímiles, así como los intereses que ambas sirven en nuestra sociedad. Mientras que la servidumbre de finca enclavada, en tanto derecho real, responde a consideraciones relacionadas al disfrute de la propiedad y el aprovechamiento de ésta con relación a terceros, las calles constituyen un espacio que

Precisamente en atención a la prohibición legal de fincas enclavadas, la *Ley Orgánica de la Administración de Reglamentos y Permisos*, legislación vigente al momento en que BCC solicitó el permiso de construcción, disponía en su artículo 23 que la Administración de Permisos estaba impedida de expedir permisos de construcción para un "solar o parcela, a menos que dicho solar o parcela tenga acceso a una carretera o calle que haya recibido el status legal de calle pública antes de la fecha de la solicitud para adquirir dicho permiso". Ley Orgánica de la Administración de Reglamentos y Permisos, Ley Núm. 76 de 24 de junio de 1975, 23 L.P.R.A. sec. 71(V). La calle así designada, ya fuese mediante el traspaso al Municipio o la rotulación en los planos conforme a la sección 9.10 del Reglamento de Planificación, sería inscribible en el Registro de la Propiedad a favor del Estado. Por tanto, la normativa vigente al momento del acuerdo entre el Municipio de Dorado y BCC establecía que el hecho de que una calle no cumpliese con el requisito de haber recibido el status legal de pública, conforme a los preceptos legales y reglamentarios reseñados, impediría la extensión de un asiento registral para la parcela en cuestión. *Véase*, Luis Rafael Rivera Rivera, *Derecho Registral Inmobiliario puertorriqueño* 384 (2da ed.

---

viabiliza el desplazamiento urbano, el movimiento, la comunicación, el acceso y la interacción ciudadana. Así, una calle sirve una función social que trasciende la relación que se da entre dos propietarios particulares. Por esta razón, no puede concebirse como una simple servidumbre de paso.

2002).[38] *Véase además*, Margarita E. García Cárdenas, *supra*, en la pág. 80.

### III

La reglamentación y legislación anteriormente discutida parten de la premisa indiscutible que encarna el artículo 256 de nuestro Código Civil: en Puerto Rico, las calles son bienes de uso público. Esta afectación legislativa es cónsona con pronunciamientos judiciales relativos a la naturaleza de las calles en una sociedad civil, tanto por este Tribunal como por el Tribunal Supremo de los Estados Unidos.[39]

---

[38] Resulta preocupante que la Opinión mayoritaria pase por alto estas disposiciones legales. Además, el hecho de que no se profundice la sumisión voluntaria por parte de BCC a la Ley de Control de Acceso merece un breve comentario. En esencia, la Ley de Control de Acceso alude expresamente a las calles dentro de las urbanizaciones públicas y **privadas**. *Véase*, Ley de Control de Acceso, Ley Núm. 21 de 20 de mayo de 1987, según enmendada, 23 L.P.R.A. sec. 64. Esto se explica precisamente por el requerimiento del traspaso de las calles, como bienes de uso público, a la entidad competente, independientemente de la naturaleza pública o privada de la urbanización.

[39] *Véanse*, *Saldaña v. Concejo Municipal de San Juan*, 15 D.P.R. 37, 51 (1909)( "[Las calles] han sido destinadas al uso de los habitantes de la ciudad, y todos y cada uno de ellos desde el Gobernador, en su palacio, hasta el limosnero en su choza, tienen derecho al uso libre y continuado de las mismas".); *Pacheco Fraticelli v. Cintrón Antonsanti*, 122 D.P.R. 229, 241 (1941) ("Desde tiempos inmemoriales los parques, las plazas y las calles en Puerto Rico han constituido foros de divulgación, de intercambio y de crítica de ideas. Es en ellos en donde la conciencia ciudadana y particular forma de ver el mundo tienen impacto y repercuten. *Son los foros públicos por excelencia para la divulgación y expresión de ideas.* Las calles en particular constituyen un instrumento eficaz de divulgación de ideas accesible para aquellos individuos y grupos que no cuentan con suficientes recursos económicos y que no tienen, por tanto, acceso a los medios de comunicación masiva como lo son la radio, la televisión y la prensa".) A nivel federal, véanse, *Hague v. Committee for Indus. Organization*, 307 U.S. 496, 515

La Opinión mayoritaria también parece partir de esa premisa. Así, antes de comenzar a discutir la clasificación tripartita de los bienes dispuesta en nuestro Código Civil, una mayoría de este Tribunal reconoce que, "el régimen jurídico que aplica a la categoría de bienes de dominio público, que es en la que el Código incluye a las calles y a los caminos vecinales . . . es importante ya que, como veremos, un bien de esa naturaleza (público) no puede ser propiedad de una persona particular". *Watchtower Bible and Tract Society v. Municipio de Dorado*, 2014 T.S.P.R. 138, en la pág. 11. Esta afirmación podría explicar cómo gran parte del análisis expuesto en la Opinión se centra en la naturaleza jurídica de los bienes de dominio y uso público, afirmando, sin ambages, que el criterio definitorio en su calificación es el uso público al que se destinan. *Watchtower Bible and Tract Society v. Municipio de Dorado*, 2014 T.S.P.R. 138, en la pág. 18 ("Cabe destacar que en todo caso, lo que define a estos bienes es el uso público al que se destinan".) Asimismo,

---

(1939) ("Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens.") (Roberts J., Op. Concurrente, adoptada por una mayoría del Tribunal Supremo de los Estados Unidos en *Kunz v. New York*, 340 U.S. 290, 293 (1951)); *Schneider v. State*, 308 U.S. 147, 163 (1939) ("Municipal authorities, as trustees for the public, have the duty to keep their communities' streets open and available for movement of people and property, the primary purpose to which the streets are dedicated.").

la Opinión reconoce que "no es necesario que los bienes de dominio público sean propiedad del Estado o de sus dependencias" pues "lo que caracteriza a estos bienes no es la propiedad o pertenencia en sí", sino "la finalidad del bien, es decir, la afectación de este al uso público general". *Id.* en las págs. 19-20. Explica la mayoría que la afectación de un bien al uso público no depende "de la actividad material y contingente de la construcción de la cosa." *Id.* en la pág. 19 n. 18.

Luego de lo que parece ser un análisis funcional y teleológico de la naturaleza jurídica de los bienes de dominio y uso público, la mayoría explica que "la afectación por acto legislativo es el único procedimiento para que entren al dominio público categorías enteras de bienes" *Id.* en la pág. 20. Posteriormente, asevera que "[b]asta con que la Ley [. . .] declare el carácter de bienes de dominio público a los de un tipo determinado, para que todos los que participan de esa misma naturaleza vengan a integrarse en dicho dominio". *Id.* (*citando a* I. Miralles González, *Dominio público y propiedad privada en la nueva ley de costas* 69 (1992)).

Confusamente, la Opinión procede a reconocer que el artículo 256 del Código Civil "es el precepto que define el carácter demanial de las calles". *Id.* en la pág. 21. Es decir, la mayoría reconoce que la afectación de las calles en nuestro ordenamiento jurídico emana de una disposición legal que declara el carácter público de un tipo de bienes: las calles. No obstante, parece entender

que la referida disposición legal alude únicamente a la categoría de calles públicas, más no así a las privadas, pues ambas constituyen bienes de "tipos determinados" distintos.[40]

De esta manera, luego de afirmar que el artículo 256 del Código Civil consigna la naturaleza pública de las calles y abundar en cómo el factor definitorio para determinar qué bienes pertenecen al dominio público es su destino o función, una mayoría concluye que la determinación en cuanto a si un bien como las calles es público o privado estriba exclusivamente en la procedencia de los fondos con los que se subvencionó su construcción. Así, distingue entre aquellas calles costeadas por el Estado y aquellas costeadas por particulares y entiende que la proveniencia de los fondos automáticamente crea dos tipos de bienes distinguibles.[41]

---

[40] Nótese como el artículo 256 del Código Civil no incluye el calificativo "públicas" para modificar el término calles. Sin embargo, al referirse a las fuentes y aguas, se modifica ese tipo de bienes con el calificativo "públicas". Es decir, el legislador contempló la posible existencia de fuentes y aguas públicas y privadas como "tipos determinados" de bienes distintos. *Véase*, Cód. Civ. P.R. Art. 256, 31 L.P.R.A. sec. 1025.

[41] En este contexto, el Tribunal nos informa que en *Caquías v. Asoc. Res. Mansiones de Río Piedras*, 134 D.P.R. 181 (1993) y Asoc. Ctrl. Acc. *Maracaibo v. Cardona*, 144 D.P.R. 1 (1997), "contrario al [caso] que hoy nos ocupa- se resolvieron en el contexto de urbanizaciones cuyas calles eran municipales y estaban costeadas con fondos públicos." *Watchtower Bible*, 2014 T.S.P.R. en la pág. 23. Todo ello para validar su peculiar tesis de que, para determinar si las calles son públicas o privadas, tenemos que auscultar con qué fondos éstas se construyeron. Aseveraciones de esta naturaleza son, como poco, preocupantes, pues dejan en evidencia un sorprendente desconocimiento de hechos fundamentales del desarrollo urbano de nuestro País. Es de todos sabido, que la inmensa mayoría de las urbanizaciones

Esto, a pesar de que ambos bienes cumplen la misma función y exhiben las mismas características físico-espaciales. Este silogismo es inaudito y carece de toda lógica.[42]

Resulta preciso, además, reiterar que la coletilla en la que se ampara la mayoría para justificar la existencia de calles privadas únicamente aplica a las obras de servicio público que sean costeadas por el Estado. Así lo entienden los comentaristas españoles al interpretar el artículo 344 del Código Civil español, análogo al nuestro pero con referencia directa a los pueblos y las provincias. Manresa, por ejemplo, separa los bienes comprendidos en el referido articulado en cuatro categorías distintas: (1) los caminos provinciales y vecinales; (2) las plazas, calles y paseos; (3) las

en Puerto Rico se construyen en terrenos privados en los cuales la reglamentación vigente, tal y como ocurre en este caso, exigía, como condición para el otorgamiento del permiso de desarrollo, que sus calles fueran cedidas a los municipios y que su uso fuese público. Es decir, las calles en Caquías y Maracaibo se construyeron sobre un terreno privado, por desarrolladores privados y advinieron municipales como resultado de la condición impuesta por el Estado para el otorgamiento de los permisos de desarrollo. Nos encontramos pues, llana y sencillamente, ante un argumento falaz.

[42] Con relación a la afectación de tipos determinados de bienes, nos explica Escribano Collado, aludiendo específicamente a la calificación de las calles, que éstas son "un bien que se individualiza por el destino que cumple, es decir, teleológicamente, en cuyo favor vienen establecidas las características físicas exigidas, todas las que observen una misma identidad física y teleológica constituyen una igual categoría". Pedro Escribano Collado, *Las vías urbanas: Concepto y régimen de uso* 246-47 (1973). Por tanto, afirma que "la figura de la calle privada destinada al exclusivo disfrute de sus propietarios es, tanto dentro como fuera de las ciudades, un supuesto anómalo, contradictorio y de necesaria superación". *Id.* en la pág. 246.

fuentes y aguas públicas, y (4) las obras públicas de servicio general **costeadas por los mismos pueblos o provincias**. *Véase*, III J.M. Manresa y Navarro, *Comentarios al Código Civil español* 103 (1904). Es decir, tal y como explicáramos en la Opinión Disidente, la coletilla "costeadas por el Estado", bajo las nociones más elementales de gramática, modifica las obras públicas de servicio general y no los demás bienes comprendidos en el artículo.[43]

Una discusión que se contrae a la clasificación de las calles en nuestro ordenamiento jurídico y cuyo resultado final estriba en un reconocimiento de calles privadas en base a la entidad o sujeto que costeó su construcción es, a todas luces, un esfuerzo discursivo que aspira a fundamentar lo insostenible. El empeño de una mayoría de declarar la existencia de calles privadas bien pudo haberse fundamentado de manera más consecuente mediante la doctrina de desafectación. Por supuesto, ese proceder hubiese requerido identificar uno de los tres supuestos bajo los cuales un bien pasa a ser desafectado.

En este caso, sería imposible afirmar con seriedad que las calles construidas en BCC han sufrido cambios en

---

[43] En cuanto a la inclusión de las calles como bienes de dominio público, Escribano Collado comenta, luego de discutir la tradición que informó la redacción del artículo 344 del Código Civil español, que "[l]as calles siguen siendo bienes destinados al uso público como los venían siendo desde las Partidas y su configuración como bienes de dominio público sigue siendo esencialmente la misma, basada en la idea de la protección del derecho de todos al uso reconocido". Escribano Collado, *supra*, en la pág. 105.

sus condiciones naturales. Asimismo, sería insólito razonar que, por virtud de ley o actos administrativos, las calles de BCC fueron desafectadas. Esto, en atención a los preceptos legales anteriormente estudiados, los cuales exigían, inequívocamente, el traspaso de las calles al Municipio de Dorado. De igual dificultad hubiese sido calificar una acción *ultra vires* del Municipio de Dorado como un acto administrativo, cuando, al momento del acuerdo con BCC, éste carecía de las prerrogativas que la adopción de un Plan Territorial confiere a los municipios.[44]

En fin, el ejercicio adjudicativo que realiza una mayoría de este Tribunal evidencia una metodología jurídica maleable a los intereses de sectores particulares en nuestra sociedad que descarta, no solo la normativa vigente, sino también la infinidad de consideraciones de política pública y judicial que militan en contra del precedente adoptado.

## IV

Por entender que toda determinación judicial debe fundamentarse en un análisis sosegado e integrado de las

---

[44] No fue hasta el 8 de junio de 2011 que se aprobó el Plan Territorial del Municipio de Dorado, conforme a la adopción de éste por parte de la Junta de Planificación mediante resolución. *Véase*, Orden ejecutiva del Gobernador de Puerto Rico aprobando el plan territorial del Municipio de Dorado, Boletín Administrativo Núm. OE-2011-021. Es importante señalar que el Municipio de Dorado alegó que operó la desafectación cuando se pactó que las calles no le serían transferidas a éste y permanecerían bajo el control de BCC. *Véase*, Alegato del Municipio de Dorado, en la pág. 14. La opinión mayoritaria, sin embargo, no atendió este planteamiento.

consecuencias de la norma pautada sobre el entorno social,

político y económico en el cual habrá de implantarse, es

forzoso examinar las ramificaciones de los

pronunciamientos vertidos por este Tribunal. Para esto, es

preciso señalar que configurar lo público y lo privado en

el contexto de la planificación urbana constituye un acto

inmanentemente propio de la Asamblea Legislativa, siendo

ésta la rama gubernamental  que mejor podrá concretar la

configuración legal de este nuevo tipo de bien. Compete

igualmente a la Asamblea Legislativa el desarrollo de las

normas y preceptos legales que regirán estas nuevas

comunidades exclusivas y confinadas a los regímenes

organizativos que establezcan sus asociaciones de

residentes.[45]

---

[45] La falta de una prerrogativa legítima por parte de este
Tribunal para enmendar el Código Civil y la clasificación
de bienes contenida en éste fue atendida por el Juez
Asociado Negrón García en las expresiones a las que
curiosamente alude una mayoría:

> La Asamblea Legislativa tiene la potestad de
> enmendar el Código Civil y otras leyes para
> traspasar las calles residenciales a bienes de
> uso privado. Claro está, una vez dejen de ser
> bienes de uso público, su mantenimiento no
> podrá ser con fondos públicos municipales o
> estatales. Conllevaría el que con el traspaso
> de las calles se traspase el costo de
> mantenimiento de éstas, incluyendo el
> alumbrado, las reparaciones y la
> responsabilidad civil sobre éstos. El efecto
> sería que las calles se convirtieran en bienes
> de uso común limitado de las urbanizaciones con
> todas las responsabilidades, obligaciones y
> problemas que esto conlleva.

> Asoc. Ctrl. Acc. Maracaíbo v. Cardona 144
> D.P.R. 1, 66 (1997). (Op. Concurrente y
> Disidente, J. Negrón García).

El reconocimiento de calles privadas hace necesaria la adecuación de los preceptos legales y la reglamentación urbanística aplicable, así como la formulación de legislación que regule y encauce la existencia de complejos residenciales con calles privadas. Así lo reconoce el tratadista Martín Blanco cuando mantiene que "la realidad socio-económica y urbanística de estas urbanizaciones privadas o particulares plantea una serie de problemas de diversa índole necesitados de una regulación legal actualizada". José Martín Blanco, *Las urbanizaciones privadas y su posible configuración jurídica* 22 (1973). Martín Blanco señala, además, que el reconocimiento de las urbanizaciones privadas requiere "una construcción unitaria de tal figura jurídica en su propia sustantividad y en la plenitud de su multiforme

---

Evidentemente, la mayoría no discernió el significado de estas expresiones. Lo que es peor, en la Opinión, sin asomo de sonrojo, afirma que "tampoco nos compete emitir un dictamen que se extienda más allá de nuestras facultades como foro judicial, trastocando los límites de las funciones que son propias de la Asamblea Legislativa de Puerto Rico". *Watchtower Bible and Tract Society v. Municipio de Dorado*, 2014 T.S.P.R. 138, en las págs. 8-9. Conviene evocar, además, pronunciamientos previos de una mayoría de este Tribunal y recordarles que, una decisión que implique el reconocimiento legal de una figura no contemplada en nuestro Código Civil, "no se puede dar en los pasillos del Tribunal Supremo, sino en el hemiciclo de los Cuerpos Legislativos". *A.A.R., Ex parte*, 187 D.P.R. 835, 877 (2013). En aquel caso, este Tribunal evitó intervenir en una controversia que planteaba una desigualdad plasmada en nuestro Código Civil, la cual perjudicaba a un grupo particular de ciudadanos ya desfavorecidos en nuestro ordenamiento jurídico. En el caso que nos ocupa, una mayoría hace lo contrario para propagar la desigualdad social y favorecer aún más los intereses del sector privado.

contenido". *Id.* en la pág. 25. Acomodaticiamente, la mayoría descontextualiza las expresiones de Martín Blanco, quien precisamente denuncia la falta de legislación reguladora y expone alternativas en torno a cómo podrían abordarse los problemas que supone la existencia de urbanizaciones residenciales privadas. De ahí a que el título de su obra aluda a la "posible configuración jurídica" de éstas. De una lectura cabal de su obra se desprende que, en repetidas ocasiones, se discute la falta de una regulación legal específica concerniente a las urbanizaciones privadas en España y los problemas que esto ha generado, incluyendo la polémica y la inconsistencia doctrinal en torno a la existencia de calles privadas.

La mayoría, al optar por desentenderse de las implicaciones de su determinación, desatiende un sinnúmero de problemas jurídico-legales de difícil dilucidación. A modo de ejemplo, ¿cómo se garantizará el ejercicio de derechos fundamentales consagrados en nuestra Constitución, tanto por residentes como por no residentes, en estas nuevas comunidades? ¿Al delegársele funciones inherentemente públicas, constituirán las asociaciones de residentes actores estatales? ¿Cómo podrá el Estado evitar actuaciones discriminatorias o arbitrarias por parte de estas asociaciones? ¿Podrán las asociaciones impedir el uso a un residente de una de las calles privadas dentro de la urbanización por no haber pagado la cuota o haber incumplido con algunas de las normas contenidas en el reglamento de ésta? ¿Podrán los residentes hacer mejoras a

estas calles de naturaleza privada que interfieran con los planes de uso de terreno, el flujo de aguas pluviales y la conservación del medioambiente? ¿Cómo atenderá el Estado actuaciones de los residentes que incidan en la conservación de los recursos naturales y arqueológicos contenidos en determinada urbanización? ¿Recaerá únicamente sobre la asociación de residentes la responsabilidad de proveer y mantener servicios esenciales como agua potable y electricidad, recogido de basura y pavimentación? ¿Qué poderes tendrá la Policía de Puerto Rico para ejercer sus facultades y deberes dentro de los predios de una urbanización privada? ¿Qué mecanismos de tributación atenderán este nuevo tipo de propiedad privada? ¿Podrán los residentes pedir exenciones contributivas municipales bajo el argumento de que sufragan, mediante la cuota de mantenimiento, los servicios provistos dentro de la urbanización? ¿Quién responderá civilmente por accidentes ocurridos en estas calles privadas? ¿Podrá una asociación de residentes enajenar una calle privada? ¿Qué ocurrirá si un acreedor hipotecario decide ejecutar el bien hipotecado y éste consiste en una calle privada? ¿Podrá cobrar a los residentes por su acceso? ¿Cómo se garantizará el acceso a las playas, calles aledañas y otros bienes de uso público a la ciudadanía cuando el único acceso sea mediante una calle privada? ¿Podrán establecerse peajes en estas calles para cobrarle a aquellos que deseen utilizarlas?

Estimo que la complejidad que subyace estas interrogantes no favorece el reconocimiento *por vía judicial* de calles de titularidad privada. Ante todo, con tal de armonizar los intereses envueltos y atender los problemas señalados, el reconocimiento de calles privadas tendría que estar precedido por un proceso deliberativo, abarcador y participativo, en el cual los múltiples sectores que constituyen la comunidad puertorriqueña puedan expresarse y plantear sus respectivas interrogantes. Ello, indudablemente, le compete a la Asamblea Legislativa y no a este Tribunal; mucho menos a través de interpretaciones jurídicas infundadas.

Más importante aún, el reconocimiento de calles privadas en nuestro ordenamiento no puede, bajo ningún concepto, minar el ejercicio por parte del Estado de sus facultades y potestades típicas en relación al uso de terrenos, concesión de permisos, ejecución de obras de construcción y otras funciones inherentemente públicas. Mucho menos puede impedir que estas comunidades estén exceptuadas del poder de razón de Estado por el mero hecho de que sus calles sean de propiedad privada. El antagonismo socioeconómico que supone el reconocimiento de calles privadas no sólo propende a la criminalidad, la inequidad y el discrimen, sino que alienta la secesión de grupos y comunidades del orden político del País y la exclusión de aquellos grupos que carecen de recursos económicos para formar parte de estos enclaves. Supone una extracción sin precedentes del orden público y trastoca el

funcionamiento de un Estado democrático constitucional basado en la participación ciudadana y la integración social.

Irrebatiblemente, una urbanización residencial con calles privadas inaccesibles al público general representa "un estado de suspensión del orden jurídico-institucional del Estado al que pertenece; es lugar de nuevas y específicas formas de gobernanza construida ad hoc y aceptada en un pacto de mutuo acuerdo por sus habitantes; es el Estado dentro del Estado". Bernardo Secchi, *supra*. Una determinación que tiende a promover la proliferación de comunidades cuasi-autónomas, sin una configuración jurídica determinada ni legislación que regule su funcionamiento y operación desmerece nuestro compromiso con la justicia y la sana convivencia social.

En atención a la renuencia de una mayoría de este Tribunal de reconsiderar el dictamen emitido, disiento de su proceder y reafirmo mis expresiones anteriores en *Watchtower Bible and Tract Society v. Municipio de Dorado*, 2014 T.S.P.R. 138 (Rodríguez Rodríguez, J., Op. Disidente). Por los fundamentos que anteceden, proveería con lugar a la reconsideración que nos fue solicitada.

Anabelle Rodríguez Rodríguez
Juez Asociada